-JULIUS FREIBERG et al. vs. NICHOLAS STEENBOCK, Defendant, FIRST
NATIONAL BANK OF DENVER, Intervener.

Submitted on brief by appellants, argued by respondent, July 20, 1893. Affirmed
Sept. 7, 1893.

Delivery on Sale of Property under Pledge.

When, at the time of a sale or transfer, personal property is in the hands
• of one who has a lien upon it, notice to him of such sale or transfer is
sufficient to constitute a delivery, as against subsequent attaching cred-
itors.

Findings Supported by the Evidence.

Evidence *held* sufficient to sustain the findings of fact.

Appeal by plaintiffs, Julius Freiberg et al., from an order of the
District Court of Hennepin County, *Frederick Hooker*, J., made
March 7, 1893, denying their motion for a new trial.

. The defendant Nicholas Steenbock and his partner Jacob Boehm
were engaged in wholesale trade in wines and spirits at Denver,
Colorado, under the firm name of Boehm & Co. They owned ware-
house receipts for two hundred and sixty barrels of whiskey in vari-
·ous bonded warehouses in Ohio and Kentucky. These receipts
were called whiskey certificates and were transferable by indorse-
ment and delivery. They entitled the holder to the whiskey on
presentation of the certificate at the warehouse and payment of
·charges. Boehm & Co. borrowed of J. C. Oswald & Co., of Minne-
·apolis, $15,000 and delivered to them these whiskey certificates as
collateral security for the payment of the debt. On March 14,
1892, there remained unpaid $5,540.62 of this debt. The value of
the certificates was $10,000 or more. Boehm & Co. were also on
that day indebted to the First National Bank of Denver, Colo., over
$58,000, and by instrument dated on that day transferred and as-
signed to the bank these whiskey certificates, subject to the claim
·of J. C. Oswald & Co., and also transferred to it certificates for
1,050 barrels more in the hands of Moore & Selleger at Louisville,
Ky., which that firm held as security for $5,800. The bank agreed
to pay the balance due to J. C. Oswald & Co. and to Moore & Sel-
leger and receive the whiskey certificates and apply the net pro-
·ceeds on the debt of Boehm & Co. to it. Boehm & Co. telegraphed

J. C. Oswald & Co. to draw on the First National Bank of Denver for the amount due the firm and attach the certificates. The firm telegraphed back to the Denver Bank on March 15, 1892, to send $5,540.62 to a bank in Minneapolis, and they would receive it and deliver the whiskey certificates. Before this was accomplished Boehm & Co. failed and Boehm committed suicide. The plaintiffs were partners doing business at Cincinnati, Ohio, under the firm name of Freiberg & Workum. They commenced this action on March 17, 1892, in the District Court of Hennepin County against Steenbock, the surviving partner, to recover $4,804, due them from Boehm & Co., and on that day made and filed affidavit that J. C. Oswald & Co. had in their hands property of Boehm & Co., and garnished that firm. On April 9, 1892, Theodore Basting, one of the firm of J. C. Oswald & Co., appeared and made disclosure of the facts. The First National Bank of Denver intervened and was made a party in the action, and by its complaint claimed the whiskey certificates under its assignment of them from Boehm & Co. The bank tendered to J. C. Oswald & Co. the balance due them, and they accepted the money and transferred to the bank all their rights to the certificates. The issues were tried November 3, 1892. Findings were made and judgment ordered that the First National Bank of Denver is owner of the whiskey certificates, and entitled to the possession of them and to the whiskey they represent.

*Longbrake & Hanley*, for appellants.

The telegram from Boehm & Co. to J. C. Oswald & Co. was incompetent as evidence of either a sale or delivery of the whiskey or whiskey certificates. It was simply an instruction from Boehm & Co. to Oswald & Co. to draw on Boehm & Co. for amount due to Oswald & Co. and attach the certificates to the draft and send the draft to the First National Bank of Denver. In order to constitute a valid bill of sale the parties, seller and purchaser, must be named or so pointed out or described as to leave no uncertainty as to who is intended as seller and who purchaser. The bill of sale to the Denver Bank does not name or sufficiently point out the claimant as the purchaser of the certificates in Oswald's hands to meet this requirement, and was void and improperly received in evi-

dence. There is no evidence of any delivery, actual or constructive, by Boehm & Co. to the Denver Bank, unless the sending of the telegram or the delivery of the bill of sale, or both, constituted such a delivery; and if there was no delivery the sale is presumed to have been fraudulent as to the creditors of Boehm & Co. The sending by Boehm & Co. of the telegram was not even a notice to Oswald & Co. of the sale, or of the fact that any one other than Boehm & Co. was the owner of the certificates or whiskeys, much less the delivery; and the mere execution and delivery of the bill of sale was not such a delivery of the property mentioned in the bill of sale as the law requires. *Mullen* v. *Noonan,* 44 Minn. 541; *Chickering & Sons* v. *White,* 42 Minn. 457; *Molm* v. *Barton,* 27 Minn. 530.

The burden of proof is on the claimant to show a valid sale, and there is no evidence that the whiskeys represented by these certificates were not in the actual possession of Boehm & Co. at the time of the pretended sale; and there is no evidence of a delivery of the whiskey, and we submit that the execution and delivery of the bill of sale, is not such a delivery of the property as the law contemplates. 1878 G. S. ch. 41, § 15.

There being no delivery of the whiskey or of the certificates, the burden of proof is upon the claimant to show that the sale was made in good faith, and without any attempt to hinder, delay or defraud creditors. The claimant has not rebutted the presumption of fraud which arose from the want of delivery. It is not enough to remove the presumption, to merely show that the purchaser gave a valuable consideration. *Wallace* v. *Nodine,* 57 Hun, 239; *Siedenbach* v. *Riley,* 111 N. Y. 560.

*Weed Munro,* for respondent.

On March 15, 1893, the surviving partner, Steenbock, made and delivered the formal written assignment to the intervener. It was dated March 14. The question whether or not it was delivered at that time is the only one that was controverted, and upon that point the court below found for the intervener.

No delivery of the whiskey or of the certificates was necessary. 1878 G. S. ch. 41, § 15, applies only to a sale of goods in the vendor's possession or under his control. The property in this case

was held by J. C. Oswald & Co., the garnishee, as security for a debt not yet due—a hostile claim. This made actual delivery and change of possession impossible, and relieved them of the duty and adequately excused its nonperformance. *Mumper* v. *Rushmore*, 79 N. Y. 19; *Stimson* v. *Wrigley*, 86 N. Y. 332; *Case* v. *Burrows*, 54 Iowa, 679; *Campbell* v. *Hamilton*, 63 Iowa, 293.

There was a sufficient delivery. The law relating to the delivery of personal property and a change of possession accommodates itself to its nature and situation, as well as to the circumstances of each case. *Lathrop* v. *Clayton*, 45 Minn. 124. All that is ever required to perfect a sale as against creditors is, that the depositary shall be notified of the transfer and consent to keep the property for the vendee. *Potter* v. *Washburn*, 13 Vt. 558. Consent may be inferred from silence of bailee when requested to keep the property for the purchaser. *Rice* v. *Courtis*, 32 Vt. 460; *Dempsey* v. *Gardner*, 127 Mass. 381; *Russell* v. *O'Brien*, 127 Mass. 349; *Wooley* v. *Edson*, 35 Vt. 214.

The intervener submits that the question whether it purchased in good faith, without intent to hinder, defraud, or delay defendants' creditors, was a question of fact, 1878 G. S. ch. 41, §§ 20, 21, upon which the court below must have found in the intervener's favor, and that the case discloses sufficient evidence upon which to base such a finding, and that it should not be disturbed.

COLLINS, J. From an examination of the evidence in this action we are of the opinion that it warranted the findings of fact and conclusion of law. Nor did the court err, as claimed by appellants, when receiving in evidence the exhibits referred to in the assignments of error. Intervener's title to the bonded warehouse certificates or receipts and to the whiskey in store, which they represented and called for, depended on various transactions, commencing with its agreement to make a loan of money to Boehm & Co., if the latter would assign and convey their interest in these certificates or receipts already pledged to and in the possession of J. C. Oswald & Co., at Minneapolis, Minn., and including the execution and delivery of the bill of sale. It had been shown by the testimony that, as security for the loan of money made by the intervener to Boehm & Co., the latter had agreed to assign and

convey its interest in the pledged certificates or receipts, and to notify the pledgees to make a sight draft for the amount of their debt, to attach the certificates, and send these papers on for collection to the intervener bank at Denver, Colo. It was perfectly proper to show that the pledgees were so notified by Boehm & Co. The bill of sale, dated March 14th, but really executed and delivered a day or two later, is not open to the objection urged by appellants' counsel. There is no uncertainty therein as to who was vendor or who was vendee.

It is claimed that under the provisions of 1878 G. S. ch. 41, § 15, the transaction in question was presumptively fraudulent and void as against the creditors of Boehm & Co., because there was no immediate delivery of the certificates or of the whiskey mentioned therein, and no change of possession; and that the statutory presumption has not been rebutted, as it may be, by competent proof of good faith, and an absence of intent to hinder, delay, or defraud. The court found to the contrary, and that there had been an adequate delivery. We need not consider the claim of respondent's counsel that the statute had no application to the facts here, because neither whiskey nor certificates were in the possession or under the control of Boehm & Co. when assigned and conveyed to intervener bank, for the evidence justified the finding of the trial court. At the time of the transfer to the intervener bank, the whiskey itself was stored in a bonded warehouse, only to be removed on the surrender of the certificates and compliance with their conditions, and these certificates—in the hands of pledgees—were several hundred miles away. The bank had parted with its money, and had taken a bill of sale of the certificates and of the whiskey, subject to the pledgees' claim. The latter were notified of the transfer, and, laying aside all that took place after the transfer and before the decease of Mr. Boehm, it is certain that before the garnishment the intervener had accepted the pledgees' proposition to pay a draft at Minneapolis for the amount of their debt, the certificates being attached, and the draft and certificates were in a Minneapolis bank for that purpose. The law relating to the delivery of goods and chattels and a change of possession is flexible, accommodating itself to the nature of the property, the situation, and the circumstances of each case. Where the articles

at the time of the sale or transfer are in the hands of one who has a lien upon them, notice to him of such sale or transfer is sufficient to constitute a delivery, as against subsequent attaching creditors. *Appleton* v. *Bancroft*, 10 Met. (Mass.) 231; *Dempsey* v. *Gardner*, 127 Mass. 381, and cases cited. It was not in the power of Boehm & Co. to make manual delivery of the property. All was done that the nature of the case admitted, and proper exertions were used to make an early delivery of the certificates. Nothing more was required.

Order affirmed.

(Opinion published 56 N. W. Rep. 175.)